# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2023

Lyle W. Cayce
Clerk

No. 21-60182

Simon Hagos Gidey,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the Board of Immigration Appeals
Agency No. A213 482 834

Before Smith, Clement, and Wilson, *Circuit Judges*.
Per Curiam:[*]

Simon Hagos Gidey, purportedly a native and citizen of Eritrea, was served with a notice to appear for arriving in the United States without a visa or other valid entry document. He conceded removal and applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). The immigration judge (IJ) denied his applications. Gidey appealed to the Board of Immigration Appeals (BIA), which dismissed his appeal. Gidey petitioned this court for review. We deny the petition.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60182

Gidey testified as follows at his removal hearing.  He was born in 1994 and raised primarily by his mother in Senafe, Eritrea.  His father was a soldier. In 2016, Gidey's father was arrested, and his family's income plummeted. To make up for the shortfall, Gidey started working at a bakery in May 2016. He completed eleventh grade a month later and, per Eritrean law, was required to report to a military camp to begin compulsory military service. Gidey shortly received two summonses from Eritrean authorities directing him to report.  He ignored them because he knew he would be arrested if he reported and because he needed to support his family financially.  He further explained that he opposes Eritrean military service because it is "like slavery," "human rights are not respected," it is unpaid, it lasts indefinitely, and "[soldiers] are [] servant[s] of the officials."

In October 2016, after Eritrean authorities arrested Gidey's mother, he turned himself in.  He was detained for two weeks.  During that time, he was beaten and interrogated.  He escaped detention by scaling a prison fence and traveled by foot through Eritrea into Ethiopia.  Gidey was questioned by Ethiopian authorities, received a ration card, and completed forms to obtain refugee status.  He was transported to a refugee camp called Hitsats, where he lived for about three years.  Gidey testified that he was politically active there and openly expressed his views against the Eritrean government.

According to Gidey, after Ethiopia and Eritrea entered into a peace treaty, agents of the Eritrean government began entering Ethiopian refugee camps to kidnap Eritreans.  In August 2019, Gidey fled to Brazil with the assistance of a smuggler who took Gidey's ration card, but supplied Gidey with an Ethiopian passport that had Gidey's identifying information on it. Gidey arrived in Laredo, Texas in February 2020 and applied for admission to enter the United States.  In support, Gidey submitted a declaration, birth certificate, handwritten baptismal certificate, letters from his family members, and country conditions evidence.

No. 21-60182

The IJ held that Gidey's testimony was "lacking in persuasiveness and that corroboration was necessary." Specifically, the IJ faulted Gidey for failing to produce the military summonses and proof of his employment at the bakery. Gidey explained that he could not provide the summonses because he did not ask his family in Eritrea to send them. He clarified that he assumed his family had thrown them away. As for proof of employment at the bakery, Gidey proffered only a letter from his mother, which the IJ found insufficient because she was an interested witness not subject to cross-examination.

Further, the IJ found that Gidey's "identity was questionable as well." Though acknowledging that Gidey provided a birth certificate and handwritten baptismal certificate, the IJ found that neither document had been authenticated. The IJ also noted that Gidey had obtained an "Ethiopian passport that allowed him to travel through many different countries on his way to the United States." This fact, in conjunction with "the manner in which [Gidey] allegedly obtained his Ethiopian passport" and "the alleged length of time [Gidey] indicated he was in Ethiopia," led the IJ to conclude that Gidey's "nationality could be Eritrean or Ethiopian." Given the lack of corroboration, the IJ found that Gidey could not meet his burden to show entitlement to relief.[1]

Gidey appealed to the BIA, which upheld the IJ's determination that Gidey's claims were not sufficiently corroborated and rejected Gidey's explanations for his failure to corroborate.[2] Gidey now seeks our review.

---

[1] The IJ, assuming Gidey's persuasiveness, alternatively analyzed Gidey's claims on the merits and reached the same result.

[2] The BIA also considered the merits of Gidey's claims in the alternative and reached the same result.

No. 21-60182

"We review the order of the BIA and the ruling of the IJ to the extent it influences the order of the BIA." *Rui Yang v. Holder*, 664 F.3d 580, 584 (5th Cir. 2011). We review for substantial evidence the BIA's determinations that Gidey was not eligible for asylum, withholding of removal, or CAT relief. *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). When we review for substantial evidence, "reversal is improper unless we decide not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it." *Id.* (citation and quotation marks omitted). Gidey bears the burden of establishing his entitlement to asylum, withholding of removal, and CAT relief. *Rui Yang*, 664 F.3d at 584, 588–89. He fails to meet his burden, as he has not shown that the evidence compels a conclusion contrary to that reached by the BIA. *See id.*

Insofar as he argues that the BIA erred by requiring him to submit corroborating evidence, this argument fails. *See id.* at 585–87. Moreover, the BIA's conclusion that Gidey reasonably could have provided the requisite corroborating evidence is supported by substantial evidence. *See id.* at 587. Finally, the country conditions evidence that Gidey submitted does not establish that it is more likely than not that he will be persecuted, much less tortured, in the country of removal because Gidey failed to persuade the IJ of his identity, i.e., that he is a native and citizen of Eritrea. True enough, the BIA has granted CAT relief to Eritreans "based on the Eritrean government's practices and its appalling human rights record," *Milat v. Holder*, 755 F.3d 354, 364 (5th Cir. 2014), but Gidey's CAT claim falters, like his others, because he has not provided sufficient evidence that he is Eritrean, as opposed to Ethiopian. Gidey thus failed to prove that he falls into the categories of people who, per the country conditions evidence in the record, may be tortured in Eritrea: Eritrean nationals who evade military service and Eritreans who leave the country illegally.

PETITION DENIED.